IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE ALBERTO ALEJANDRO, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| MARTIN O'MALLEY[1]<br>Commissioner of Social Security | : No. 21-cv-04076-RAL |
| Defendant | : |

**RICHARD A. LLORET**                                                    **April 18, 2024**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM OPINION

      This is an appeal of a final decision of the Commissioner of the Social Security Administration. The decision held that Plaintiff Jose Alejandro was not disabled under the Social Security Act. Mr. Alejandro raises three issues for my review, under 42 U.S.C. 405(g). He contends that (1) the Administrative Law Judge (ALJ) did not properly analyze the opinion of Dr. Levinson, Mr. Alejandro's treating psychiatrist; (2) the ALJ failed to properly analyze the opinion of Mr. Alejandro's nurse practitioner; and (3) the ALJ failed to incorporate the limitations urged by the psychiatrist and nurse practitioner in her (the ALJ's) hypothetical question to the vocational expert. Doc. No. 10 at 1–14 ("Pl. Br.").

      For reasons that I will elaborate, I find that the ALJ committed error in her assessment of the psychiatrist's opinion, and I do not find the error harmless. Because I

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as Defendant. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

found error at this step, I do not need to resolve the second and third issues. I will grant the request for review and enter judgment in favor of the Plaintiff.

## PROCEDURAL HISTORY AND BACKGROUND

On August 8, 2016, Mr. Alejandro applied for a Period of Disability and Social Security Disability Insurance Benefits (DIB), under Title II of the Social Security Act (the Act), and Supplemental Security Income (SSI) under Title XVI of the Act. R. 87–88, 183–92.[2] He contended that he has been disabled within the meaning of the Act since March 5, 2016. His applications were denied in 2016. R. 89–97. Mr. Alejandro requested and received a hearing by an ALJ, who issued a decision in September of 2018 finding that Plaintiff was not entitled to disability benefits. R. 9–28, 102–03. Mr. Alejandro requested review of the ALJ decision by the Appeals Council (R. 181–82), was denied, and appealed to this court. Doc. No. 1.[3] The District Court remanded. Another hearing was held before a different ALJ in May of 2021. R. 613–46. On May 26, 2021, the ALJ issued a decision finding that Plaintiff was not entitled to disability benefits. R. 592–612. Mr. Alejandro filed this civil action seeking review. Doc. No. 1.

Mr. Alejandro, born in July 1970, was 51 years old as of the date of the ALJ's decision (R. 87). He has an eighth-grade education. R. 36, 221. He has a history of past relevant work as a display maker. R. 605. The ALJ determined that Mr. Alejandro suffers from "severe" impairments, as defined under the Act, of schizoaffective disorder, bipolar type; generalized anxiety disorder; intermittent explosive disorder; and panic disorder with agoraphobia. R. 598. Mr. Alejandro's date last insured (DLI), under the Act, was June 30, 2017. *Id.*

---

[2] All references to the administrative record will be listed as "R. ____." The administrative record is document number seven on ECF.

[3] Unless otherwise indicated, all references to the electronically docketed record will be cited as "Doc. No. ____ at ____."

2

## STANDARDS OF REVIEW

Mr. Alejandro has the burden of showing that the ALJ's decision was not based on "substantial evidence." 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). "Substantial evidence" is not a high standard. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations and internal quotations omitted).

I exercise "plenary review over questions of law." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003) (citation omitted). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984); *see also Trinh v. Astrue*, 900 F. Supp. 2d 515, 518 (3d Cir. 2012) (citing *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001)). Accordingly, I can overturn an ALJ's decision based on a harmful legal error even when I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983).

An ALJ must provide sufficient detail in her opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain her resolution of the conflict. As the court of appeals observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999),

> when a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence [she] rejects. *See Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir.1983).

While it is error for an ALJ to fail "to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination," *Burnett*, 220 F.3d at 121, an ALJ's decision is to be "read as a whole." *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Caruso v. Comm'r. of Soc. Sec.*, 99 Fed. App'x. 376, 379–80 (3d Cir. 2004) (examination of the opinion, as a whole, permitted "the meaningful review required by *Burnett*," and a finding that the "ALJ's conclusions [were] . . . supported by substantial evidence."). The issue is whether, by reading the ALJ's opinion as a whole, with the record, the reviewing court can understand why the ALJ came to her decision and identify substantial evidence in the record supporting the decision. *Id.* at 379. I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *Trinh*, 900 F.Supp.2d at 518; *see also* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

## DISCUSSION

This case centers on the deference to be given to a treating physician's opinion, and the content and specificity required of an ALJ's reasoning when electing not to give that deference.

At step two of the sequential evaluation process[4] the ALJ determined that Mr. Alejandro suffers from the severe impairments of schizoaffective disorder, bipolar type; generalized anxiety disorder; intermittent explosive disorder; and panic disorder

---

[4] The ALJ performed the five-step analysis required under the regulations. *See Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–03 (3d Cir. 2019).

4

with agoraphobia. R. 598.

The ALJ found Mr. Alejandro not disabled at steps four and five of the evaluation process, determining that, notwithstanding the fact that Mr. Alejandro had limitations, there were still unskilled jobs at all exertional levels he could perform. R. 595–606.

Stuart L. Levinson, M.D., a psychiatrist who is certified by the American Board of Psychiatry and Neurology, treated Mr. Alejandro. R. 334–37, 365–69, 377–88, 477–522, 543–46. Dr. Levinson completed a medical source statement about Mr. Alejandro's limitations as of his last visit on August 18, 2017. R. 576–77. Dr. Levinson opined that his patient was "unable to meet competitive standards," that is, he "has noticeable difficulty . . . from 21 to 40 percent of the workday or work week" in multiple areas of functioning, including his abilities to:

- maintain attention for a two-hour segment,
- sustain an ordinary routine without special supervision,
- work in coordination with or proximity to others without being unduly distracted,
- make simple work-related decisions,
- complete a normal workday and workweek without interruptions from psychologically based symptoms,
- perform at a consistent pace without an unreasonable number and length of rest periods,
- accept instructions and respond appropriately to criticism from supervisors,
- get along with coworkers or peers,
- interact appropriately with the general public,

- respond appropriately to changes in a routine work setting, and
- deal with normal work stress.

R. 576. Dr. Levinson stated that his patient had "mood instability, voices and paranoid feelings along with anger issues and panic that would make [him] unable to work in competitive employment." R. 577. Had Dr. Levinson's opinion been credited, it seems clear the residual functional capacity fixed by the ALJ would have precluded all work.

Because Mr. Alejandro's case was filed before March 27, 2017, the regulations in effect at the time required the ALJ to give "controlling weight" to treating physician opinions under ordinary circumstances. The new regulations dispense with this preference. *Compare* 20 C.F.R. § 404.1527 (evaluating opinion evidence for claims filed before March 27, 2017) *with* 20 C.F.R. § 404.1520c (consideration and articulation of medical opinions for claims filed on or after March 27, 2017).

Under the applicable rules, a treating source's opinion is entitled to controlling weight when supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.[5] *See* 20 C.F.R. § 416.927(c)(2); *Titles II & Xvi: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2P, 1996 WL 374188 (S.S.A. July 2, 1996) ("SSR 96-2P"). A treating source's opinion may be rejected "on the basis of contradictory medical evidence." *Plummer*, 186 F.3d at 429; *see Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (contradictory opinions by state agency physicians were a sufficient basis for refusing to give a treating physician's conclusory opinion controlling weight); *Brown*

---

[5] A treating source is a "physician, psychologist, or other acceptable medical source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship with the patient." 20 C.F.R. § 404.1502. A medical source may be considered a treating source where the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the claimant's] condition(s)." *Id.*

6

*v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011) (ALJ "clearly explained" why she gave greater weight to the opinion of a medical consultant than to treating physician). So too may an opinion be rejected if there is insufficient clinical data, *see Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985), or if the opinion is contradicted by the physician's own treating notes or the patient's activities of daily living. *See Smith v. Astrue*, 359 F. App'x 313, 316–17 (3d Cir. 2009). The opinion may be accorded "more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (*citing Newhouse*, 753 F.2d at 286).

Pursuant to 20 C.F.R. § 416.927(c)(2), when deciding that a treating source's opinion is not entitled to controlling weight, the ALJ must evaluate the opinion by considering certain factors such as: the length of the treatment relationship, the frequency of visits, the nature and extent of the treatment relationship, whether the source has supported his or her opinion with medical evidence, whether the opinion is consistent with the medical record and the medical source's specialization. 20 C.F.R. § 416.927(c)(2); *see also* SSR 96-2p, 1996 WL 374188, at *4.

"While the ALJ is, of course, not bound to accept physicians' conclusions, he [or she] may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Cadillac v. Barnhart*, 84 Fed. App'x. 163, 168 (3d Cir. 2003) (quoting *Kent v. Schweiker,* 710 F.2d 110, 115 n.5 (3d Cir. 1983)) (alteration in original, internal quotations omitted). In choosing to reject a treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317.

7

Here the ALJ did not say much when dispensing with the treating physician's opinion:

> Despite his prior treating relationship with the claimant, at the time of writing this assessment Dr. Levinson admitted to not have received claimant for many months. More importantly, the significant limitations professed by Dr. Levinson are inconsistent with his own treatment notes for the claimant, which generally reflect mild[6] mental status examinations (see, e.g., Ex. B2F).

R. 604. This is a conclusion, not an explanation. As Plaintiff's briefs point out, there are many passages in the medical record that support the significant limitations found by Dr. Levinson. Pl. Br. 9–11; Doc. No. 14 at 2–3 ("Reply Br."). That would not be fatal, if the contrary evidence was addressed by the ALJ. But it is not, and that presents a serious problem.

While the Commissioner does a thorough job of pointing out record evidence that supports the ALJ's finding, that is not the ALJ's work product, but the Commissioner's. Doc. No. 13 at 6–7 ("Com. Br."). That is an important distinction, because I am not allowed to rely on after-the-fact justifications by the Commissioner to bolster an ALJ opinion that does not adequately deal with contrary evidence. *See Fongsue v. Saul*, 2020 WL 5849430, at *8 (E.D. Pa. 2020) ("[T]his court is constrained to review only the ALJ's reasoning, not the post hoc arguments propounded by Defendant after the ALJ's decision") (*citing Fargnoli*, 247 F.3d at 44 n.7 (quoting *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must

---

[6] The characterization of Mr. Alejandro's mental status examination results as "mild" seems unencumbered by a supporting medical opinion, at least not one cited by the ALJ. The import of this comment seems to be that if the Plaintiff's condition were disabling one would expect to see more florid exam results. In the absence of a supporting medical opinion, the statement amounts to a lay opinion of the ALJ. Inferences from the absence of evidence can be probative, but they require reliable and complete contextual knowledge of what one should expect to see. Absent appropriate training and experience, a lay person is hard-pressed to know whether a particular set of exam results are mild, florid, indicative of grave disability or of no moment. In short, an ALJ's unsupported characterization of mental exam results as "mild" is not substantial evidence.

8

be judged are those upon which the record discloses that its action was based.")));  *Teada v. Comm'r of Soc. Sec.*, 2020 WL 1953660, at *2–3 (E.D. Pa. 2020) (citations omitted). I conclude that the ALJ committed error by discounting Dr. Levinson's opinion without adequately addressing the contrary evidence in the record.

Having concluded there was error, I must also assess whether the error was harmful. Harmless error analysis is applicable to review of agency decisions. *See Shinseki v. Sanders*, 556 U.S. 396, 407–10 (2009) (harmless error analysis applied to review of VA administrative determination). Our court of appeals has applied harmless error analysis when reviewing Social Security appeals. *McGraw v. Comm'r of Soc. Sec.*, No. 14-4364, 2015 WL 1951892, at *2 (3d Cir. May 1, 2015) (citing *Burnett,* 220 F.3d at 122; *Albury v. Comm'r of Soc. Sec.*, 116 F. App'x 328, 330 (3d Cir. 2004). District courts in our circuit have also applied harmless error in Social Security cases. *See Watts ex rel. D.W. v. Astrue*, No. 12-4116, 2013 WL 2392909, at *3–4 (E.D. Pa. June 3, 2013). I am aware, in assessing harmless error, that Dr. Levinson's opinion was a "checkbox, form opinion," (Com. Br. 6) and therefore viewed, as an ordinary matter, with some level of skepticism. *Mason*, 994 F.2d at 1065. I also am aware that the checkbox nature of the opinion was not a factor relied on by the ALJ to discredit Dr. Levinson's opinion. R. 604; Reply Br. 4.

Mr. Alejandro argues that a district court should not substitute its independent analysis for reasoning omitted by the ALJ, citing to *Fargnoli v. Massanari*, 247 F.3d 34 (3d Cir. 2001) and *Security and Exchange Commission v. Chenery Corporation*, 332 U.S. 194 (1947). Reply Br. 3. *Fargnoli* involved an ALJ's failure to consider significant adverse evidence. 247 F.3d at 44. The court of appeals held that the district court's consideration and weighing of evidence not considered by the ALJ violated the rule of *Chenery. Id.* at n.7. In *Chenery* itself, the Supreme Court held that a court was

not free to affirm an agency decision on grounds[7] other than those relied upon by the agency because it usurped a function ceded by Congress to the agency, not the courts. 332 U.S. at 196. There is tension between *Chenery* and the harmless error rule.[8] *See Watts ex rel. D.W.*, 2013 WL 2392909, at *4.

The Supreme Court distinguished *Chenery*, in *Massachusetts Trustees of Eastern Gas and Fuel Associates v. United States*:

> [W]e find inapposite here cases refusing to validate an exercise of administrative discretion because it could have been supported by principles or facts not considered, or procedures not undertaken, by the responsible body. These cases are aimed at assuring that initial administrative determinations are made with relevant criteria in mind and in a proper procedural manner; when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached, as in this instance (assuming there was such a mistake), the sought extension of the cases cited would not advance the purpose they were intended to serve.

377 U.S. 235, 247–48 (1964). The error complained of in *Eastern Gas and Fuel Associates* "had no bearing on . . . the substance of decision reached," and so applying *Chenery* "would not advance the purposes they were intended to serve." *Id.* "*Chenery* does not require that we convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 (1969).

Here, the *Chenery* problem is dead center. The substance of the treating physician rule is important to this case and to the administrative scheme generally. An

---

[7] Ordinarily an appellate court is free to "affirm on any ground supported by the record." *Bradley v. West Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 650 (3d Cir. 2018).

[8] Courts have long wrestled with how to apply *Chenery*. *See, e.g.,* Amy R. Motomura, *Rethinking Administrative Law's Chenery Doctrine: Lessons From Patent Appeals At The Federal Circuit*, 53 SANTA CLARA L. REV. 817, 826–31 (2013) (describing the variety of interpretations of, and exceptions to, *Chenery*). The Seventh Circuit has adopted a straightened variation of the harmless error rule, in Social Security cases, to accommodate *Chenery*. *See Kennedy v. Kijakazi*, 2023 WL 1990303, at *3 (7th Cir. 2023) ("But in narrow circumstances harmless error may provide an exception to the *Chenery* doctrine. . . . The exception is available only if the reviewing court can predict with great confidence, based on overwhelming support in the record, that the agency will reinstate its decision." (Citations omitted).

ALJ, not a district court, is supposed to make the difficult balancing decision between various physicians' opinions and other medical evidence. Not just that, an ALJ is supposed to make the decision in a particular *way*—by explaining her treatment of the evidence. *Plummer*, 186 F.3d at 429. Part of that explanatory burden is dealing with contrary evidence. The ALJ did not do that here, and I am not confident the result would be the same if the ALJ thoroughly considered the contrary evidence in the record when assessing the treating physician's report. I therefore do not find the error harmless under *Fargnoli* and *Chenery*.

## CONCLUSION

Based upon the above, I will grant Mr. Alejandro's Request for Review and remand for further proceedings consistent with this opinion.

BY THE COURT:

*s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**